104 So.2d 452

Fred J. WETZEL

v.

BINGMAN LABORATORIES, INC.

8 Div. 228.

Court of Appeals of Alabama.

June 24, 1958.

Smith & Moore, Guntersville, for appellant.

Lusk & Lusk, Guntersville, for appellee.

CATES, Judge.

Mr. Wetzel, who did business in Albertville, Alabama, as "Tri-State Veterinary Supplies," bought of the Bingman Laboratories, Inc., a quantity of "Gro-Factor Poultry Feed Supplement." Wetzel had been induced in this purchase by a letter from the Bingman Laboratories' sales manager, which reads in part:

"Mr. Horton requested that we advise you regarding our company policy of cooperating with the dealer so he is not 'stuck' with any of our merchandise.

"We have a company policy that whenever a dealer or jobber purchases an item that he is unable to sell and has carried in stock for a reasonable period of time, and has made an attempt to sell it, we will exchange it for other items in our line which he can move.

"In other words, any time you purchase an item from us and you are unable to move it and we can't move it for you, *we will authorize you to return it,* issue you credit *and replace it with products* that you can sell. You will not be 'stuck' with any of our items." (Italics added.)

The Gro-Factor Poultry Supplement evidently did not sell very well, for in August of 1955 Wetzel turned over some of it to

Mr. Horton, appellee's salesman for the area, who took it about over his trade territory, with the result that he disposed of only two bags of the supplement. In the meantime, Wetzel had ordered other merchandise from Bingman Laboratories, but held off paying for them until sued on account on October 21, 1955.

Wetzel, in the meantime, had returned (without obtaining prior approval from Bingman) the unsold Gro-Factor Poultry Supplement, but Bingman refused to accept it; and, at the time of trial, these goods were lying in a warehouse in Caldwell, Ohio.

Bingman Laboratories, Inc., took the position that the option to return was available only if the buyer was current in his payments on the stated account at the time he sought to exchange the merchandise.

The trial court granted a motion for a new trial after a verdict on second trial in favor of Wetzel. The minute entry states that the judge was of the opinion that the verdict was against the weight of the evidence.

The sole substantive question which we perceive here is whether or not there is any room for the application here of the implied warranty of merchantability contained in Code 1940, T. 57, § 21(2).

The only evidence that Wetzel produced, other than his own say-so, was the statement of a dealer in a neighboring town who said that Gro-Factor was, in effect, a "slow moving" product.

■ There was no evidence to show whether or not the Gro-Factor Poultry Supplement is a standard or normal article of commerce, though there was some evidence to indicate that it was a relatively new biochemical additive for poultry feed. It seems that the use of "merchantability" in this case, both at common law and under the Sales Acts, refers to the acceptability for commerce, rather than its appeal to buyers, i. e., it connotes a quality of inherent soundness sometimes described as a little above the level of mediocrity, sometimes as being of a middling grade, and in other cases as of being of average suitability to the market. From any aspect, it definitely refers to the quality referable to a standard, and not to the intangible appeal to the whims or psychological reaction of buyers. See Williston on Sales, Rev. Ed., § 243; Annotation 21 A.L.R. 367.

■ Accordingly, while it may be that there was some intrinsic trait or defect that might have caused Wetzel's customers to avoid or show little enthusiasm for Gro-Factor, nevertheless to avail himself of this implied warranty of merchantability, as he did by pleading for the purpose of set off, he must, on trial, come forward with evidence of more than a mere negative nature. In essence, all that he showed was that people did not buy without going into any of the reasons (if any) which might cause Gro-Factor to be a pariah of the poultry feed market.

In Alabama we have the scintilla rule and yet we also permit the trial judge to set aside the verdict when not supported by the substantial weight of the evidence. See Tuscaloosa Motor Co. v. Cockrell, Ala.App., —— So.2d ——.

The landmark case in Alabama as to appellate review of appeals from decisions on motions for new trials (occasioned by the adoption of a statute permitting appeals from judgments on motions for new trials, cf. Code 1940, T. 7, § 764) is Cobb v. Malone, 92 Ala. 630, 9 So. 738, 739, wherein we find:

> "The power to set aside verdicts has been generally regarded in this country as inherent in courts organized upon the principles of common law, though in some states it is regulated by statute, enumerating the grounds upon which a motion for a new trial may be made. The power is essential to prevent irreparable injustice in cases where a verdict wholly wrong is the result of inadvertence, forgetfulness, or intentional or capricious disregard

of the testimony, or of bias or prejudice, on the part of juries, which sometimes occur. But, in exercising the power, the court should be careful not to infringe the right of trial by jury, and should bear in mind that it is their exclusive province to determine the credibility of witnesses, to weigh the testimony, and find the facts. Being selected for their impartiality and qualifications to judge facts, and unanimity of opinion and conclusion being required, their verdicts are presumed to be correct. It has been said that no ground of new trial is more carefully scrutinized or more rigidly limited than that the verdict is against the evidence. Hil. New Trials, 339. The power should be exercised only when it affirmatively appears that the substantial ends of justice require the examination of the facts by another jury. If these be the principles by which the trial court should be governed, they apply with much more force to the exercise of the power by an appellate court. When the presiding judge refuses to grant a new trial, the presumption in favor of the correctness of the verdict is thereby strengthened. He is selected because of his legal learning, sound judgment, and the confidence of the public in his impartiality, and the courage of his convictions of right and justice. He has heard and seen the witnesses testify, observed their tone and demeanor, and noticed their candor, or convenient failure of memory, to avoid impeachment, or for other improper purpose. The appellate court, possessing none of these aids and advantages, and · receiving the evidence on paper only, is less qualified to determine what evidence is unworthy of belief, or what weight should be given to that which has been rejected by the jury, and may give undue weight to the testimony of some of the witnesses. Doubtless in view of these considerations, the power to grant new trials, or to correct errors of the circuit or city court in granting or refusing to grant the same, is conferred, by the statute upon this court, in general terms. No rules, by which it shall be governed, are prescribed, leaving the power to be exercised in accordance with well recognized usages and rules in such cases, and in the mode in which, in the judgment of the court, the ends of justice will be best subserved. * * * When there is no evidence to support the verdict, it is clearly the duty of the court to grant a new trial. No court, possessed of a proper sense of justice, and a due regard for a fair and impartial administration of the law, can afford to allow such a verdict to stand. But when there is evidence on both sides, or some evidence to support the verdict, it should not be set aside, because it may not correspond with the opinion of the court as to the weight of the testimony, or because it is against the mere preponderance of the evidence. Comparing the analogous rules above stated, and the rules established by other appellate courts, we deduce therefrom, and lay down as rules for the guidance of this court, that the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. And decisions granting new trials will not be reversed, unless the evidence plainly and palpably supports the verdict. * * *"

■ As we construe the evidence, we cannot say that the trial judge abused his discretion in granting the motion for new trial. Accordingly, the judgment below is due to be

Affirmed.